IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN P. DUNBAR, | Civ. No. 21-00451 JMS-WRP |
| Plaintiff, | ORDER GRANTING DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS, ECF NO. 15, WITH LEAVE TO AMEND |
| vs. | |
| AIRBNB, INC., | |
| Defendant. | |

## ORDER GRANTING DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS, ECF NO. 15, WITH LEAVE TO AMEND

## I. INTRODUCTION

On October 6, 2021, an arbitrator dismissed pro se Plaintiff John P. Dunbar's ("Plaintiff" or "Dunbar") arbitration claim seeking damages for alleged defamation against Defendant Airbnb, Inc. ("Defendant" or "Airbnb"). *See* ECF No. 15-10. Dunbar then filed a petition in this court, titled "Motion for De Novo Judicial Review of Arbitrator's Ruling and Petition to Vacate Award" (the "Petition"). ECF No. 1. After much delay caused by issues with proper service of the Petition, Defendant filed the instant Motion to Dismiss, seeking to dismiss the Petition for lack of subject-matter jurisdiction. ECF No. 15. Based on the following, the court GRANTS the Motion to Dismiss, but does so without prejudice and with leave to amend.

## II.  SUMMARY

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., among other things, authorizes courts to compel arbitration under 9 U.S.C. § 4, as well as to confirm, vacate, or modify arbitral awards under 9 U.S.C. §§ 9−11.  Chapter 1 of the FAA, however, does not itself create federal jurisdiction.  Rather, for such actions to proceed in federal court, there must be "an independent jurisdictional basis," *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009), such as a federal question under 28 U.S.C. § 1331 or complete diversity of citizenship under 28 U.S.C. § 1332.  *Vaden* held that, under 9 U.S.C. § 4, courts may "look through" to the substance of the underlying controversy between the parties to find the necessary federal jurisdiction over an action seeking to compel arbitration.  *See* 556 U.S. at 62.

On March 31, 2022, the Supreme Court issued *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), which drew a distinction between petitions seeking to compel arbitration from those seeking to confirm or vacate an arbitration award under 9 U.S.C. §§ 9 or 10 (or, for that matter, any other provision of chapter 1 of the FAA besides 9 U.S.C. § 4).  *Badgerow* held that, in determining whether federal subject-matter jurisdiction exists over a petition to confirm or vacate an arbitral award—unlike a petition to compel arbitration—a court may *not* "look through" to the underlying controversy to find federal jurisdiction.  *See Badgerow*,

142 S. Ct. at 1314.  Rather, under the language of the relevant provisions of the FAA, "a court may look only to the application actually submitted to it in assessing its jurisdiction."  *Id.*  That is, a federal court has subject-matter jurisdiction only if the "face of the application [to confirm or vacate] itself . . . shows that the contending parties are citizens of different States (with over $75,000 in dispute) . . .  [o]r if it alleges that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief."  *Id.* at 1316.  *Badgerow* reasoned that—unlike other provisions of chapter 1 of the FAA—9 U.S.C. § 4 specifically directs courts to look at "the controversy between the parties," in determining whether to compel parties to arbitrate.[1]  142 S. Ct. at 1317.

The posture of this case between Dunbar and Airbnb presents an issue that arises from and is ultimately controlled by *Badgerow*.  As will be explained, even though the court previously had jurisdiction to *compel* the parties to arbitrate Dunbar's claim for defamation against Airbnb (or at least to have an arbitrator

---

[1] The first sentence of § 4 provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement*, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit *arising out of the controversy between the parties*, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added).  Sections 9 or 10 do not include similar language.

decide in the first instance whether the claim was arbitrable), the court does not have jurisdiction over Dunbar's present Petition seeking "de novo judicial review" and *vacatur* of the Arbitrator's decision (at least as the Petition is currently written). The court would have to—in violation of *Badgerow*—"look through" the current Petition to the underlying controversy before Dunbar could satisfy the requirements of federal jurisdiction under 28 U.S.C. § 1332.[2] As the Petition is currently written, the court cannot tell based on the "face" of the Petition whether the citizenship of the parties is diverse, nor whether the amount-in-controversy exceeds $75,000.

Nevertheless, it may be that Dunbar could amend the Petition so that it states a basis for federal diversity jurisdiction on its face. The court will thus give him an opportunity to amend the Petition to state a basis for federal jurisdiction. *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (explaining that leave to amend should be granted if it appears at all possible that a pro se plaintiff can correct the defect in the pleading).

### III. <u>BACKGROUND</u>

To understand the posture of this case, the court first sets forth the relevant details of the long procedural history of the dispute. Because they are not

---

[2] It is undisputed that subject-matter jurisdiction here could not be based on a federal question under 28 U.S.C. § 1331—for example, an alleged violation of a federal statute that provides a cause-of-action.

critical to deciding the present Motion, the substantive allegations regarding Dunbar's claim of defamation are not discussed in detail and are mentioned only to provide context.

## A.    The First Arbitration

On July 20, 2018, Dunbar—who offered accommodations to third-parties ("guests") as a "host" via Airbnb's online platform, which facilitates rentals between "hosts" and "guests"—filed an arbitration demand against Airbnb with the American Arbitration Association ("AAA").  ECF No. 15-3.  The demand described the issues in dispute as "breach of contract, violations of due process, misrepresentation," and sought $100,000, along with fees, interest, and costs.  *Id.* About a year later, on July 26, 2019, an arbitrator ruled in favor of Airbnb "as to all claims regarding and arising out of [Dunbar's] Airbnb, Inc.'s contract and account."  ECF No. 15-5 at 7, PageID.103.[3]

---

[3] The arbitrator described the facts leading to the claim as follows:

> In September of 2014, guests who stayed on Claimant's [(Dunbar's)] Property filed a police report, complaining that Claimant displayed threatening behavior.  They also cited to publicly-available reports of prior arrests of Claimant, as well as a charge of disorderly conduct against Claimant.  Furthermore, in August of 2017, other guests who stayed on Claimant's Property called Respondent's [(Airbnb's)] customer service line to complain of a possible domestic issue and, in general, feeling unsafe.  The 2017 guests further alleged that subsequent to posting an online review, Claimant aggressively confronted them about their complaints through a messaging application.

(continued . . . )

**B.    The First Federal Action**

On December 5, 2019, Dunbar filed a pro se federal complaint in this court seeking damages against Airbnb for defamation "arising from [Airbnb's] deliberately false and malicious accusations that [Dunbar] perpetrated the crime of 'domestic violence' on December 8, 2017."  ECF No. 15-7 at 1, PageID.109.  *See Dunbar v. Airbnb, Inc.*, Civ. No. 19-00648 JMS-WRP (D. Haw. Dec. 5, 2019) ("*Dunbar I*").  In that suit, Dunbar alleged jurisdiction based on diversity of citizenship, claiming that he was a citizen of Hawaii and Airbnb was a citizen of California.  *Id.* at 2, PageID.110.  Dunbar also alleged an amount in controversy exceeding $75,000.  *Id.*

Airbnb responded in *Dunbar I* by filing a Motion to Compel Arbitration, which this court granted on April 1, 2020.  *See* ECF No. 15-8 (also available at *Dunbar v. Airbnb, Inc.*, 2020 WL 1550236 (D. Haw. Apr. 1, 2020)).  This court determined that an arbitration clause in Airbnb's contract with Dunbar—and specifically, a clause delegating to an arbitrator the threshold question of whether a dispute was arbitrable—was enforceable and not

---

Following the aforesaid alleged complaints, Respondent terminated Claimant's account, thereby cancelling all of Claimant's future bookings.  Thereafter, Claimant filed an Arbitration Demand.

ECF No. 15-5 at 1, PageID.97.

unconscionable, and thus the court compelled the parties to arbitrate the suit (or at least the threshold question of arbitrability). *See* 2020 WL 1550236, at *6.[4]  The court dismissed the action (rather than staying it under 9 U.S.C. § 3) because no other parties or claims remained. *See id.* at *7 (citing *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) ("[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration.")).[5]  In so doing, this court stated that "[i]f Plaintiff subsequently re-files an action based on this same arbitration claim, the court will waive the filing fee and the matter will be assigned to the undersigned." *Id.* (footnote omitted). This court noted that an example of a re-filed action would be "if the arbitrator

---

[4] The court cites to the Westlaw version of the April 1, 2020 Order for convenience because the page identification numbers in ECF No. 15-8 are not legible on the electronic copy of the Order filed in this case (Civ. No. 21-00451 JMS-WRP).

[5] Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

rules the defamation claim is not arbitrable, or if [Dunbar] seeks to confirm or to vacate an arbitration award regarding the defamation claim." *Id.* at *7 n.11.

## C.     The Second Arbitration

Following this court's Order compelling arbitration, on November 16, 2020, Dunbar filed a second pro se demand for arbitration against Airbnb with the AAA. *See* ECF No. 15-9.  Dunbar claimed that he "suffered damages caused by Respondent Airbnb, Inc. as a result of Respondent's publication of false allegation[s] that Claimant perpetrated the crime of 'domestic violence' as an Airbnb Host.  Respondent knowingly and intentionally published per se defamatory material about Claimant via multiple internet communications." *Id.* at 1, PageID.136.  Dunbar sought $1,000,000.00 in damages, along with fees, interest, and costs. *Id.*

In that arbitration, Airbnb filed a motion for summary judgment, which an arbitrator granted by order issued on October 6, 2021. *See* ECF No. 15-10.  The arbitrator concluded that Dunbar's defamation claim was "barred as a matter of law by the Doctrine of Res Judicata." *Id.* at 2, PageID.139.  The arbitrator reasoned that the first arbitration—wherein the first arbitrator found in favor of Airbnb "as to all claims regarding and arising out of [Dunbar's] Airbnb,

Inc.'s contract and account"—involved the same parties and same contract. *Id.*[6]

The second arbitrator also "conclude[d] that there was insufficient evidence to

support the defamation claim to warrant an evidentiary hearing." *Id.* And because

the second arbitrator ruled on the merits of Dunbar's claims, he necessarily must

have found that the claims fell within the scope of Airbnb's arbitration clause.

**D.    The "Motion for De Novo Judicial Review of Arbitrator's Ruling"**

On November 16, 2021, Dunbar, again appearing pro se, filed the

Petition (i.e., his "Motion for De Novo Judicial Review of Arbitrator's Ruling and

Petition to Vacate Award"). ECF No. 1. However, he filed the Petition as a

motion in the closed case, *Dunbar I*, arguing that this court had retained

jurisdiction over the matter. *Id.* at 1, PageID.1. Although this court did not retain

jurisdiction, the court recognized that its previous order in *Dunbar I* had specified

that the court would waive the filing fee and direct-assign an action based on this

---

[6] The finding of res judicata appears to be consistent with Hawaii law, even assuming that Dunbar's defamation claim (brought in the second arbitration) was not actually litigated in the first arbitration. *See Foytik v. Chandler*, 88 Haw. 307, 314, 966 P.2d 619, 626 (1998) (reiterating that, under Hawaii law, claim preclusion "precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided" (quoting *Morneau v. Stark Enters., Ltd.*, 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975))); *see also, e.g.*, *Mather v. First Hawaiian Bank*, 2014 WL 4199335, at *5 (D. Haw. Aug. 22, 2014) ("Under Hawaii law, the doctrine of res judicata applies when: 1) the claim asserted in the action in question was or could have been asserted in the prior action, 2) the parties in the present action are identical to, or in privity with, the parties in the prior action, and 3) a final judgment on the merits was rendered in the prior action.") (quoting *Pedrina v. Chun*, 97 F.3d 1296, 1301 (9th Cir. 1996)).

same arbitration claim. *See Dunbar I*, 2020 WL 1550236 at \*7. And so, the court instructed the Clerk of Court to file the Petition as the operative complaint with a new civil number, to assign it to the undersigned, and to waive the filing fee. *See* ECF No. 17 in *Dunbar I*, Civ. No. 19-00648 JMS-WRP (D. Haw.). Accordingly, the Clerk opened this case (Civ. No. 21-00451 JMS-WRP).

**E.     This Action**

As a new action, the court required the Petition to be properly served on Defendant. When that did not occur, the assigned magistrate judge recommended that the action be dismissed without prejudice for failure to complete service in a timely manner. ECF No. 10. This court, however, gave Dunbar a final opportunity to serve the Petition properly, and ordered service be completed by June 10, 2022. *See* ECF No. 12; Fed. R. Civ. P. 4(m). On June 1, 2022, Dunbar provided evidence that service had been completed as of June 1, 2022, and the court vacated the recommendation to dismiss the action as it appeared that Dunbar had complied with Rule 4. *See* ECF Nos. 13, 14. The Petition essentially then became active on June 1, 2022, and so, on June 21, 2022, Airbnb filed the instant Motion to Dismiss. ECF No. 15. Dunbar filed his Opposition on September 15, 2022,[7] ECF No. 23, and Airbnb filed a Reply on

---

[7] The Opposition was filed late, even after the court twice extended the deadline (after issuing an Order to Show Cause to explain why Dunbar failed to file a timely opposition). *See*

(continued . . . )

September 23, 2022, ECF No. 25. The court decides the Motion to Dismiss without a hearing under Local Rule 7.1(c).

## IV. <u>DISCUSSION</u>

To reiterate, Chapter 1 of the FAA does not itself create federal jurisdiction—there must be an "independent jurisdictional basis" before a federal court may act under Chapter 1 of the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).[8] When this court compelled arbitration on April 1, 2020, it had before it a complaint by Dunbar alleging defamation against Airbnb, with subject-matter jurisdiction based on complete diversity of citizenship. The court also had authority to "look through" to that substantive dispute to determine whether it could compel Dunbar to arbitrate under 9 U.S.C. § 4. *See Vaden*, 556 U.S. at 62−64. Although the court contemplated that Dunbar might subsequently seek to confirm or vacate a subsequent arbitration award, the court did not stay the action pending the arbitration. The court simply stated that if he filed such an action, it would be assigned to this judge without the need for a filing fee. Even if it could have, the court did not "retain" jurisdiction. The court dismissed the action.

---

ECF Nos. 19, 21. The court excused the late filing, extended the Reply deadline, and vacated the planned October 3, 2022 hearing. *See* ECF No. 24.

[8] In contrast, the FAA provides federal subject-matter jurisdiction for proceedings under Chapter 2 of the FAA, 9 U.S.C. §§ 201−08. *See* 9 U.S.C. § 203.

Although the court might have thought (on April 1, 2020) that it would automatically have diversity jurisdiction to confirm or vacate an award from the arbitration that it had just compelled, the Supreme Court changed that presumption on March 31, 2022 when it held on March 31, 2022 in *Badgerow* that courts may *not* "look through" a petition to confirm or vacate to the substantive controversy when assessing jurisdiction over such a petition. *See* 142 S. Ct. at 1314. The Supreme Court summarized its holding as follows:

> In [*Vaden*], we assessed whether there was a jurisdictional basis to decide a Section 4 petition to compel arbitration by means of examining the parties' underlying dispute. The text of Section 4, we reasoned, instructs a federal court to "look through" the petition to the "underlying substantive controversy" between the parties—even though that controversy is not before the court. If the underlying dispute falls within the court's jurisdiction—for example, by presenting a federal question—then the court may rule on the petition to compel. That is so regardless whether the petition alone could establish the court's jurisdiction.
>
> The question presented here is whether that same "look-through" approach to jurisdiction applies to requests to confirm or vacate arbitral awards under the FAA's Sections 9 and 10. We hold it does not. Those sections lack Section 4's distinctive language directing a look-through, on which *Vaden* rested. Without that statutory instruction, *a court may look only to the application actually submitted to it in assessing its jurisdiction.*

*Badgerow*, 142 S. Ct. at 1314 (internal citation omitted) (emphasis added). That is, to determine whether there is an independent basis of jurisdiction for an action

under §§ 9 or 10, a court looks to "the face of the application itself." *Id.* at 1316;

*see also id.* at 1320 (describing the test as "ground[ing] jurisdiction on the face of

the FAA application itself").

      *Badgerow* dealt specifically with whether a court could look to an

underlying arbitration that involved federal employment law to find federal

question jurisdiction under 28 U.S.C. § 1331.  *See* 142 S. Ct. at 1317.  *Badgerow*,

however, also contemplated that the same principles apply to assessing diversity

jurisdiction under § 1332.  *See id.* at 1316 ("If [the face of the FAA application

itself] shows that the contending parties are citizens of different States (with over

$75,000 in dispute), then § 1332(a) gives the court diversity jurisdiction."); *id.* at

1321 (discussing the pros and cons of applying a "no look through" approach to

diversity jurisdiction issues).  And post-*Badgerow*, district courts have applied its

holding when assessing diversity jurisdiction.  *See Reineri v. Int'l Business

Machines Corp.*, 2022 WL 2316622, at *3 (S.D.N.Y. June 28, 2022) ("[A court]

cannot 'look through' the petition to the 'underlying substantive controversy'

between the parties to establish either federal question or diversity jurisdiction"

(quoting *Badgerow*) (some quotation marks omitted))); *Wynston Hill Capital, LLC

v. Crane*, 2022 WL 4286608, at *3 (S.D.N.Y. Sept. 16, 2022) (same).

      Applying *Badgerow* here, the court cannot establish subject-matter

jurisdiction based on the face of "the [FAA] application actually submitted [by

Dunbar]," 142 S. Ct. 1314, without looking through to the underlying substantive controversy between Dunbar and Airbnb.  Nothing on "the face of the application itself," *Badgerow*, 142 S. Ct. at 1316, sets forth the citizenship of the parties or alleges a prima facie amount in controversy exceeding $75,000.  Rather—although the court can infer from the *prior* complaint in *Dunbar I* that the parties are diverse, and from the underlying arbitration demands that Dunbar had alleged amounts in controversy of $100,000 or $1,000,000.00—the court must look through Dunbar's Petition to make such determinations, something not permitted by *Badgerow*.[9]

As it is, Dunbar argues, among other things, that: (1) the court retained jurisdiction to hear his motion to vacate, ECF No. 1 at 1, PageID.1; (2) the arbitrator did not "draw its essence from the [arbitration] agreement," *id.* at 3, PageID.3; (3) the arbitrator failed to decide the threshold question of arbitrability, *id.* at 3−4, PageID.3–4; (4) the arbitrator's decision is subject to vacatur under

---

[9] Airbnb argues that the amount in controversy is zero because Dunbar is seeking to vacate an award that dismissed his arbitration demand and is not seeking to reopen the arbitration (seeking, instead, "de novo judicial review").  *See* ECF No. 15-1 at 9, PageID.71; ECF No. 25 at 9, PageID.168.  In this regard, Airbnb attempts to distinguish *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659 (9th Cir. 2005), in which the Ninth Circuit found the necessary amount in controversy not in the petition itself but by looking at the amount petitioner "sought to recover by its complaint."  *Id.* at 664.  It may be that this aspect of *Theis Research* is no longer good law after *Badgerow*.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (explaining that "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").  The court, however, need not reach that question here because the amount in controversy is not clear from Dunbar's Petition, and the court is granting Dunbar leave to amend.

other standards in 9 U.S.C. § 9, *id.* at 5−13, PageID.5−13; and (5) the arbitrator erred in applying the res judicata doctrine, *id.* at 14, PageID.14.  The Petition seeks "to proceed to a trial by jury in this Honorable Court."  *Id.* at 21, PageID.21.[10] Nowhere, however, does the Petition discuss jurisdiction, whether under diversity of citizenship or otherwise.  Under *Badgerow*, this court lacks subject-matter jurisdiction over the Petition.

This pleading deficiency is not surprising, given that Dunbar (proceeding pro se) filed the Petition as a motion directly in the closed *Dunbar I* docket.  As he argued, he thought that the court had "retained" jurisdiction to address confirmation or vacatur—a reasonable assumption given that the court had indicated it would waive the filing fee for a subsequent proceeding seeking to confirm or vacate an award.  Moreover, *Badgerow* had not been decided when Dunbar filed his Petition.

---

[10] It is unclear whether Dunbar seeks a trial by jury to review the arbitration award, a trial by jury of the substantive dispute—something inconsistent with the court's prior order compelling arbitration of the dispute—or a de novo review by this court in deciding whether to vacate.  In any event, however, the court is limited to reviewing the arbitration award under standards set forth in 9 U.S.C. § 10(a)—an "extremely limited review."  *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003); *see also, e.g.*, *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012) ("§ 10 of the FAA provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award. . .").  And § 10 does not provide for a jury to decide whether an arbitration award must be vacated.  *Cf. Prescott v. Northlake Christian Sch.*, 141 F. App'x 263, 268−69 (5th Cir. 2005) ("As for the FAA, its § 4 allows for a jury trial only to resolve fact issues surrounding "the *making* of an arbitration agreement").

Accordingly, the court will grant Dunbar leave to amend his Petition to allege a good faith prima facie basis for subject-matter jurisdiction. *See, e.g.*, *Lopez*, 203 F.3d at 1130–31 (explaining that leave to amend should be granted if it appears at all possible that a pro se plaintiff can correct the defect in the pleading); *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1220 (D. Haw. 2010) ("When a court dismisses a claim for failure to properly allege diversity jurisdiction, leave to amend should be granted unless doing so would be futile."); *Reineri*, 2022 WL 2316622, at *4 (granting leave to amend petition seeking to confirm arbitration award, after dismissing the petition based on *Badgerow*).

Therefore, by **December 8, 2022**, Dunbar may file an Amended "Motion for De Novo Judicial Review of Arbitrator's Ruling and Petition to Vacate Award" to state a valid basis for federal subject-matter jurisdiction. If Dunbar does not file an Amended Petition by that date, the court will instruct the Clerk of Court to dismiss this action without prejudice. *See Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) ("[D]ismissals for lack of Article III jurisdiction must be entered without prejudice because a court that lacks jurisdiction 'is powerless to reach the merits.'" (quoting *Fleck & Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1106–07 (9th Cir. 2006))).[11]

---

[11] *Badgerow* explained that, in lieu of federal actions, "state courts [have] a significant role in implementing the FAA." 142 S. Ct. at 1322. In lieu of an Amended Petition, Dunbar

(continued . . . )

## V. **CONCLUSION**

For the foregoing reasons, Defendant Airbnb, Inc.'s Motion to

Dismiss, ECF No. 15, is GRANTED.  The dismissal, however, is with leave to

amend.  Plaintiff John P. Dunbar is given until **December 8, 2022,** to file an

Amended Petition that states a valid basis for federal subject-matter jurisdiction.  If

the Petition is not amended by December 8, 2022, the court will instruct the Clerk

of Court to dismiss the action without prejudice and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 17, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Dunbar v. Airbnb, Inc.*, Civ. No. 21-00451 JMS-WRP, Order Granting Defendant Airbnb, Inc.'s Motion to Dismiss, ECF No. 15, with Leave to Amend

---

might choose to file a petition in a state court under Hawaii law (although this court cannot say whether such a petition would be barred as untimely under Hawaii Revised Statutes § 658A-23(b)).